UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kianna Gardner, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Ferrara Candy Company,<br><br>Defendant | 1:22-cv-01272<br><br><br><br>Class Action Complaint<br><br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Ferrara Candy Company ("Defendant") manufactures, labels, markets, and sells hard caramel candy described as "Rich & Creamy," under the Nips brand (the "Product").



2. The representation as "Caramel," described as "Rich & Creamy," causes consumers to expect a confection with a non-*de minims* amount of milk fat.

3. However, the representations are false, deceptive, and misleading, because the Product's fat content is almost exclusively from vegetable fat.

4. Macmillan Dictionary defines caramel as a "candy made from sugar, butter, and milk."

5. Britannica Dictionary defines caramel as a "light brown candy made from butter, sugar, and milk or cream."

6. Collins Dictionary defines caramel as "a chewy sweet food made from sugar, butter, and milk."

7. Cambridge Dictionary defines caramel as a "chewy sweet food made from sugar, butter, and milk."

8. Merriam-Webster defines caramel as a "firm, chewy, usually caramel-flavored candy made with sugar, cream, corn syrup, and butter."

9. Scholarly treatises confirm the definitions of mainstream dictionaries, describing "'Caramel candy, or 'caramel[s],'" as a "soft, dense, chewy candy made by boiling a mixture of milk or cream, sugar(s), glucose, butter, and vanilla (or vanilla flavoring)."

10. All legitimate and credible definitions of caramel candy include cream.[1]

11. Cream is the "the thick part of milk that rises to the top…that contains fat."

12. Milk fat ingredients are the most significant ingredient in caramel, responsible for texture, body, and flavor.

13. The fat is emulsified into small droplets, dispersed throughout the candy mass.

---

[1] Cream is the source of butter.

14. Milk fats provide unique flavors by carrying lipid-soluble volatile compounds like ketones and aldehydes.

15. Dairy fat ingredients are described as "rich" and "creamy" because they contains hundreds of lactones, or aroma compounds, which contribute to taste receptors in the mouth.

16. Dairy ingredients which contribute fat include milk, butter, and cream.

17. In production of caramels, refined vegetable oils are often substituted for milkfat to reduce costs, at the expense of consumers.

18. Substituting vegetable fat for dairy fat causes a confection to provide less satiety.

19. Milkfat melts at mouth temperature (95°F) and is smooth.

20. Vegetable fat does not melt at mouth temperature and leaves a waxy mouthfeel.

21. In contrast to fats from dairy ingredients, consumption of vegetable oils is linked to numerous health problems, like increased chances of heart disease and increased cholesterol.

22. Milk fat also contains calcium, vitamins A, D, E, and K, which are absent from hardened vegetable fats.

23. Despite describing the caramel candy as "Rich & Creamy," the Product does not contain butter or cream, nor does it contain more than a *de minimis* amount of milk fat.

INGREDIENTS: CORN SYRUP, SUGAR, REDUCED FAT MILK (MILK, NONFAT MILK), HYDROGENATED COCONUT OIL, WHEY, COFFEE, AND LESS THAN 1% OF SALT, MONO- AND DIGLYCERIDES, NATURAL FLAVORS, SOY LECITHIN.

3

**INGREDIENTS:** CORN SYRUP, SUGAR, REDUCED FAT MILK (MILK, NONFAT MILK), HYDROGENATED COCONUT OIL, WHEY, COFFEE, AND LESS THAN 1% OF SALT, MONO- AND DIGLYCERIDES, NATURAL FLAVORS, SOY LECITHIN.

24. While the ingredients include "Reduced Fat Milk" consisting of whole and skim (nonfat) milk, the Product's fat content is almost exclusively provided by the third ingredient, "Hydrogenated Coconut Oil."

25. Even though hydrogenated coconut oil is listed after reduced fat milk, this ingredient is close to 90% fat, whereas reduced fat milk contains 2% fat.

26. The Nutrition Facts reveals the Product contains 10 mg calcium.

| Nutrition Facts | |
|---|---|
| 8 servings per container | |
| Serv size 2 pieces (14g) | |
| Amount per serving | |
| **Calories** | **60** |
| | % Daily Value* |
| **Total Fat** 1.5g | 2% |
| Saturated Fat 1.5g | 8% |
| **Sodium** 35mg | 2% |
| **Total Carbohydrate** 11g | 4% |
| Total Sugars 7g | |
| Incl. 6g Added Sugars | 12% |
| **Protein** 0g | |
| Calcium 10 mg | 0% |
| Potassium 30 mg | 0% |

27. Given that 100g of reduced fat milk contains 126mg calcium, it takes 7.9g reduced fat milk to supply 10mg calcium.

28. As 100g of reduced fat milk contains 1.9g fat, 7.9g reduced fat milk supplies 0.15g fat.

4

29. The Product contains 1.5g fat, which means 1.35g, or ninety percent of its fat content, is from hydrogenated coconut oil, the only other ingredient with any fat.

30. The Product substitutes milk fat with the vegetable fat of hydrogenated coconut oil.

31. Though the Product contains whey, this dairy ingredient is almost entirely protein, which provides structure.

32. Whey is added for cost savings over more expensive milk fat ingredients.

33. It is false, deceptive and misleading to describe a product as "Caramel," with the prominent terms, "Rich & Creamy," because consumers will expect it is made with the standard dairy ingredients, based on milkfat.

34. However, the Product lacks the expected amount and type of milk fat ingredients.

35. The Product lacks the nutritive, sensory, organoleptic, and other attributes expected from a product identified as a "Caramel" and described as "Rich & Creamy."

36. Other products are identified as caramel and contain dairy ingredients based on milk fat, causing consumers to select Defendant's Product, based in part on the Nips' brand and its description as "Rich & Creamy."

37. Defendant makes other representations and omissions with respect to the Product which are false or misleading.

38. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

39. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

40. Defendant sold more of the Product and at higher prices than it would have in the

absence of this misconduct, resulting in additional profits at the expense of consumers.

41.   Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

42.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $2.39 for 4 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

43.   Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

44.   The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

45.   Plaintiff Kianna Gardner is a citizen of Illinois.

46.   Defendant Ferrara Candy Company is an Illinois corporation with a principal place of business in Chicago, Cook County, Illinois.

47.   The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

48.   The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

49.   The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

50. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

51. Plaintiff Kianna Gardner is a citizen of Chicago, Cook County, Illinois.

52. Defendant Ferrara Candy Company is a Illinois corporation with a principal place of business in Chicago, Illinois, Cook County.

53. Started over a year ago by a family from Italy, Ferrara has grown to become one of the most respected confectionery companies in the world.

54. Its values remain true to those established by its founder, who emphasized to never cut corners when it came to quality ingredients for customers.

55. The Nips brand is one of the most widely consumed.

56. Consumers expect they can trust a product under the Nips brand.

57. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

58. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, at locations including 8331 S Stewart Ave Chicago IL 60620-1728 between December 30, 2021, and January 30, 2022, and/or among other times.

59. Plaintiff believed the Product contained more than a de minimis amount of dairy ingredients with milk fat.

60. Plaintiff bought the Product because she expected it contained more than a de minimis amount of dairy ingredients with milk fat because that is what the representations said and implied.

61. Plaintiff relied on the words, coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

62. Plaintiff was disappointed because she believed the Product contained more than a de minimis amount of dairy ingredients with milk fat.

63. Plaintiff bought the Product at or exceeding the above-referenced price.

64. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

65. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

66. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

67. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

68. Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar caramels and confections containing caramel, because she is unsure whether those representations are truthful.

Class Allegations

69. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Michigan, Wyoming, Montana, Nebraska, Virginia, Georgia, and West Virginia, who purchased the Product during the statutes of limitations for each cause of action alleged.

70. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

71. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

72. Plaintiff is an adequate representative because her interests do not conflict with other members.

73. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

74. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

75. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

76. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Plaintiff and class members desired to purchase a product that contained more than a de minimis amount of dairy ingredients with milk fat.

79. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

80. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

81. Plaintiff relied on the representations that the Product contained more than a de minimis amount of dairy ingredients with milk fat.

82. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

83. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

84. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

85. Defendant intended that each of the members of the Consumer Fraud Multi-State

Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

86. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

87. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

88. Plaintiff entered into a contract with Defendant for purchase of the Product.

89. The terms of the contract provided that the Product contained more than a de minimis amount of dairy ingredients with milk fat.

90. Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

91. Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

92. The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained more than a de minimis amount of dairy ingredients with milk fat.

93. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

94. Defendant knew the product attributes that potential customers like Plaintiff were

seeking and developed its marketing and labeling to directly meet those needs and desires.

95. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product contained more than a de minimis amount of dairy ingredients with milk fat.

96. Defendant's representations affirmed and promised that the Product contained more than a de minimis amount of dairy ingredients with milk fat.

97. Defendant described the Product as one which contained more than a de minimis amount of dairy ingredients with milk fat, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

98. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

99. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

100. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

101. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

102. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

103. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

104. The Product did not conform to its affirmations of fact and promises due to

Defendant's actions.

105. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

106. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained more than a de minimis amount of dairy ingredients with milk fat, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

107. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

108. Defendant had a duty to truthfully represent the Product, which it breached.

109. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

110. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

111. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

112. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

113. Plaintiff and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

114. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

115. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained more than a de minimis amount of dairy ingredients with milk fat.

116. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

117. Defendant knew of the issues described here yet did not address them.

118. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

119. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: March 10, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com