UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIANNA GARDNER, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-1272 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| FERRARA CANDY CO., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Kianna Gardner has a sweet tooth, and she decided to satisfy her cravings with a box of Nips, a caramel hard candy. She wanted fat – real *dairy* fat, coming from cream. She likes the consistency of real milk fat because it is "smooth" and "melts at mouth temperature." *See* Cplt., at ¶ 19 (Dckt. No. 1). She wanted smooth, creamy, fatty caramel goodness – a heavenly mouthful that only dairy can provide.

As Gardner tells it, she got less than she bargained for. At some point, she discovered that Nips didn't offer her that full-fat dairy experience that she had come to expect. She figured out that the fat content is "almost exclusively from vegetable fat." *Id.* at ¶ 3. And she wanted fat from cows, not plants.

So Gardner filed a federal lawsuit, claiming that she was duped. She believes that the manufacturer of Nips, Defendant Ferrara Candy Company, misled her. She thinks that the packaging was deceptive and misleading because it uses the terms "caramel" and "creamy." She acknowledges that Nips candy does, in fact, contain milk fat. But there was less dairy fat than she craved and expected.

Ferrara Candy moved to dismiss. For the reasons that follow, the motion to dismiss is granted.

## Background

At the motion-to-dismiss stage, the Court must accept as true the complaint's well-pleaded allegations. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

This case is about candy. Specifically, Nips. Defendant Ferrara Candy Company "manufactures, labels, markets, and sells hard caramel candy" under the Nips brand. *See* Cplt., at ¶ 1 (Dckt. No. 1). A typical box of Nips looks like this:



*Id.*

The central feature of the packaging is the "Nips" label, which appears in a large font on the front of the box. Below that text is a description of the flavor: "Caramel." Above the Nips

label, Ferrara describes the product as "Rich & Creamy Hard Candy." *Id.* And nearby, two pieces of candy are about to be submerged in a dunk tank of caramel.

Between December 2021 and January 2022, Plaintiff Kianna Gardner bought Ferrara's Nips candy at least once, and maybe more often. *Id.* at ¶ 58. Gardner purchased a four-ounce box of the candy from stores like her local Walmart in Chicago for at least $2.39 (excluding sales tax). *Id.* at ¶¶ 42, 58.

Gardner expected the candy to have "more than a de minimis amount of dairy ingredients with milk fat." *Id.* at ¶ 59. She formed that expectation from the use of the phrase "Rich & Creamy." *Id.* She believed that the creaminess of the caramel came from dairy. But when she looked at the ingredients list, her expectations and beliefs ended in disappointment.

The Nips ingredient list includes the following items: corn syrup, sugar, reduced-fat milk (milk, nonfat milk), hydrogenated coconut oil, whey, and less than 1% of salt, mono- and diglycerides, natural flavors, and soy lecithin. *Id.* at ¶ 26; *see also* Declaration of Michelle Rodriguez, Exhibit 1 (Dckt. No. 8-2).[1]

Gardner alleges that, based on the ingredient list, the product's fat comes mainly from hydrogenated coconut oil, not dairy products. *See* Cplt., at ¶ 24 (Dckt. No. 1). To be sure, she admits that the product does have *some* amount of milk fat from dairy. *Id.* It just doesn't have as much milk fat as Gardner had expected. And it doesn't contain the type of milk fat that she had expected, either. The candy contains no butter or cream. *Id.* at ¶ 23.

The complaint explains why the fat comes mostly from coconut oil, even though Nips candy contains more dairy than coconut oil. The candy contains reduced-fat milk as its third

---

[1] Paragraph 23 of the complaint is a picture of the actual ingredient list from the package of Nips. Paragraph 24 says that hydrogenated coconut oil is the "third" ingredient, but that's not right. The preceding paragraph shows the actual list. Reduced milk fat is the third ingredient, and coconut oil is the fourth ingredient. There's more milk than coconut.

ingredient, but as the name suggests, it's low fat.  Reduced-fat milk is only 2% fat.  *Id.* at ¶ 28.  But hydrogenated coconut oil, on the other hand, is 90% fat.  *Id.* at ¶ 29.  So a little coconut oil goes a long fat way.

According to Gardner, Ferrara misrepresents the Nips product by describing the candy as "Caramel" that is "Rich & Creamy."  In her view, the candy is not "creamy" because it "lacks the expected amount and type of milk fat ingredients."  *Id.* at ¶ 34.  She thinks that the candy is not caramel at all.  And if she had known the truth, she never would have bought the product, or she would have paid less for it.  *Id.* at ¶ 41.

In the future, Gardner hopes to purchase the product again.  But she wants assurances that the product's representations are consistent with the fact that there is a *de minimis* amount of milk fat in the candy.  *Id.* at ¶ 67.  So, she wants the company to fess up and tell her that it contains less milk fat.

Disappointed with her purchase, Gardner marched straight to the federal courthouse and sued Ferrara.  *See* Cplt. (Dckt. No. 1).  She brings this putative class action on behalf of herself and "[a]ll persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged."  *Id.* at ¶ 69.  Gardner seeks to represent a multi-state class of consumers from nine other states "who purchased the Product during the statutes of limitations for each cause of action alleged."[2]  *Id.*

Gardner's complaint contains six counts:  (1) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) a violation of comparable statutes from other states; (3) breaches of express and implied warranties of merchantability and fitness for a

---

[2]  Gardner's proposed multi-state class includes consumers from Arkansas, Iowa, Michigan, Wyoming, Montana, Nebraska, Virginia, Georgia, and West Virginia.  *See* Cplt., at ¶ 69 (Dckt. No. 1).

particular purpose, and a violation of the Magnuson Moss Warranty Act; (4) negligent

misrepresentation; (5) fraud; and (6) unjust enrichment.[3]  *Id.* at ¶¶ 77–119.

Ferrara now moves to dismiss the complaint.  *See* Def.'s Mtn. to Dismiss (Dckt. No. 8).

### Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not

its merits.  *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

pleaded facts in the complaint and draws all reasonable inferences from those facts in the

plaintiff's favor.  *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive

a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for

the claim, and it must be facially plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Additionally, claims of common-law fraud or deceptive practices under the ICFA require

the plaintiff to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil

Procedure.  *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019).  Rule

9(b) requires a party alleging fraud to "state with particularly the circumstances constituting

fraud."  *See* Fed. R. Civ. P. 9(b).  The plaintiff must allege the "who, what, when, where, and

how" of the alleged fraud.  *See Vanzant*, 934 F.3d at 738.

---

[3]  Gardner withdrew a claim for breach of contract.  *See* Pl.'s Resp., at 1 n.1 (Dckt. No. 19).  Therefore, the Court dismisses Matthews's breach-of-contract claim.  *See Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *1 n.1 (N.D. Ill. 2023) (dismissing plaintiff's breach-of-contract claim after it was withdrawn).

## Analysis

Gardner brings a variety of claims, all of which share a common thread.[4]  Each of the claims requires a false or misleading statement that deceives a reasonable consumer.  And that's where the complaint comes up empty.

## I.    ICFA Claim

The Illinois Consumer Fraud and Deceptive Business Practices Act "broadly prohibit[s] unfair business practices."  *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474 (7th Cir. 2020).  To state a claim under the ICFA, a plaintiff must allege:  (1) a deceptive act or practice, (2) an intent for the consumer to rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage that was (5) proximately caused by the deception.  *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *see also Sneed v. Ferrero U.S.A., Inc.*, 2023 WL 2019049, at *2 (N.D. Ill. 2023).

To satisfy step one, Gardner must plead facts plausibly showing a deceptive act or practice.  "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive."  *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001).  Specifically, Gardner must plausibly allege that the statement was "likely to deceive a reasonable consumer."  *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020).

This standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Bell*,

---

[4]  The complaint alleges that "[t]he Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the [ICFA] and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce."  *See* Cplt., at ¶ 83 (Dckt. No. 1).  The complaint does not allege further information about these state laws.  So, the Court assumes that these Acts are substantially similar to the ICFA.  *See, e.g.*, *DeMaso v. Walmart Inc.*, 2023 WL 1800208, at *5 n.4 (N.D. Ill. 2023); *Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *2 n.2 (N.D. Ill. 2023); *Jacobs v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 3369273, at *2 (N.D. Ill. 2022).

982 F.3d at 474–75 (quoting *Beardsall*, 953 F.3d at 972–73); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (explaining that the standard is met by a misrepresentation that "is either (1) literally false, or (2) likely to mislead (either through a statement or material omission) a reasonable consumer") (quotation marks omitted).

Whether a statement is deceptive is often a question of fact. *See Bell*, 982 F.3d at 473. But not always. A case can't get to a jury unless the statement in question could mislead a reasonable consumer. *See id.* at 477; *Bober*, 246 F.3d at 940.

"Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). So, to adequately plead an ICFA claim, it is not enough to allege that the product misled a particular plaintiff. Idiosyncratic readings and unreasonable interpretations of a label don't cut it. What matters is how a reasonable consumer would read the packaging.

Claims cannot rest on "unreasonable or fanciful interpretations of labels or other advertising." *See Bell*, 982 F.3d at 477–78; *see also Bober*, 246 F.3d at 940 (dismissing a claim of deceptive advertising because the product's label "eliminates any possibility of deception" and "can only be read" in a nondeceptive way); *Sneed*, 2023 WL 2019049, at *2 ("Whether a statement is deceptive is usually an issue of fact. However, when a deceptive advertising claim is based on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may be justified.") (cleaned up); *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *12 (N.D. Ill. 2022) ("To determine the likelihood of deception, courts apply a 'reasonable consumer' standard. 'This requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the

reasonable consumer standard requires a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled.'") (citation omitted; alterations in original) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "It's well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it – and that dismissal is warranted in those circumstances." *Bell*, 982 F.3d at 493 (Kanne, J., concurring).

The Seventh Circuit favors a "practical and fact-intensive approach" when evaluating ICFA claims at the motion-to-dismiss stage. *Id.* at 478 (majority opinion). "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Benson*, 944 F.3d at 646 (alteration in original) (quoting *Davis*, 396 F.3d at 884). But checking common sense at the door isn't required.

In some cases, even a true statement can lead to a claim, if the true statement creates a false impression. *See Bell*, 982 F.3d at 479; *Beardsall*, 953 F.3d at 973 ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."); *Suchanek*, 764 F.3d at 761–62 (noting that a deceptive-practices claim under the ICFA "may be satisfied by proof that a statement is likely to mislead a reasonable consumer, even if the statement is literally true"). But again, the true statement must create a false impression that would mislead a reasonable consumer. *See Suchanek*, 764 F.3d at 761–62.

With that backdrop in mind, the Court returns to Gardner and her box of "Rich & Creamy" Nips caramels. Gardner bought the hard candy because she "expected it contained more than a de minimis amount of dairy ingredients with milk fat." *See* Cplt., at ¶ 60 (Dckt. No.

8

1). But at some point, she learned that the "fat content is almost exclusively from vegetable fat." *Id.* at ¶ 3.

Gardner feels misled, for two reasons. For starters, the box says "caramel," and Gardner believes that caramel must contain cream. *Id.* at ¶¶ 2, 3, 10, 12. What's more, the box says "creamy," and Gardner doesn't think that Nips can be creamy unless it contains cream. *Id.* at ¶¶ 2, 3, 15, 23. In her view, it is deceptive and misleading "to describe a product as 'Caramel,' with the prominent terms 'Rich & Creamy,' because consumers will expect it is made with the standard dairy ingredients, based on milkfat." *Id.* at ¶ 33.

Gardner is reading far too much into the packaging. The product did not promise a certain level of cream or other milk fat. In fact, the packaging didn't even promise that Nips contained dairy at all. No reasonable consumer could believe that the words "caramel" and "creamy" guaranteed a certain amount of cream.

Gardner points to definitions of "caramel" from an assortment of dictionaries, all of which describe caramel as a candy made from milk fat. *Id.* at ¶¶ 4–5 (citing Macmillan, Britannica, Collins, Cambridge, and Merriam-Webster). Those dictionaries don't get Gardner very far. Dictionaries do not purport to give recipes with all of the ingredients. Dictionaries aren't cookbooks.

More importantly, Ferrara's candy *does* have milk fat in it. So it meets the dictionary definitions of caramel. In fact, the complaint concedes that reduced-fat milk is the number three ingredient in Nips, behind corn syrup and sugar. *Id.* at ¶¶ 23–24. Corn syrup and sugar aren't fat. So, the leading ingredient that contains fat is, in fact, based on dairy.

The problem, as Gardner sees it, is that Nips candy has less milk fat than she expected. How much milk fat is enough milk fat? It's anyone's guess – Gardner doesn't say. She cites

nothing saying that a reasonable consumer expects caramel candy to be all or even mostly milk fat. As another court put it, "[t]he product contains various forms of milk, just not the kind" – or amount – "that Plaintiff would prefer." *Lederman v. Hershey Co.*, 2022 WL 3573034, at *4 (N.D. Ill. 2022).

A statement about the presence of an ingredient is not a promise about the amount of the ingredient. *See Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *3 (N.D. Ill. 2023) ("Packaging that merely depicts or asserts the presence of an ingredient typically cannot lead a reasonable consumer to conclude that the product contains a certain amount of that ingredient.") (collecting cases). A claim cannot rest on a mere reference to an ingredient that is, in fact, an ingredient unless something else makes that statement misleading.

Courts widely dismiss claims that a product contained only a *de minimis* amount of an ingredient when the packaging itself did not promise more. *See, e.g.*, *Biczo v. Ferrara Candy Co.*, 2023 WL 2572384, at *2 (N.D. Ill. 2023) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of milk fat ingredients in caramel candy); *Smith v. Gen. Mills Sales, Inc.*, 2023 WL 2349908, at *2–3 (N.D. Ill. 2023) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of cheese in frozen pizza rolls); *Ledezma v. Upfield US Inc.*, 2022 WL 16553039, at *4 (N.D. Ill. 2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of olive oil in a vegetable oil spread); *Bartosiake v. Bimbo Bakeries USA, Inc.*, 2022 WL 4552025, at *3 (N.D. Ill. 2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of dairy products in a chocolate fudge cake); *Lederman*, 2022 WL 3573034, at *4 (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of dairy ingredients in a fudge topping); *Karlinski v. Costco Wholesale Corp.*, 2022 WL 2867383, at *5–6 (N.D. Ill.

2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of chocolate, vanilla beans, and almonds in an ice cream bar); *Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891, at *4 (C.D. Ill. 2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of milk fat in fudge Pop-Tarts); *Harris v. Kellogg Sales Co.*, 2022 WL 1641439, at *2 (S.D. Ill. 2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of strawberries in strawberry-flavored Pop-Tarts); *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *3–6 (N.D. Ill. 2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of vanilla in vanilla-flavored ice cream); *Zurliene v. Dreyer's Grand Ice Cream, Inc.*, 591 F. Supp. 3d 362, 365 (S.D. Ill. 2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of chocolate in ice cream bars); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *4–5 (N.D. Ill. 2022) (rejecting the argument that reasonable consumers expect more than a *de minimis* amount of strawberries in strawberry-flavored Pop-Tarts).

The use of the word "creamy" isn't a hook to hang a claim on, either. Plaintiff thinks that an essential element of "creamy" is the presence of actual cream. But "cream" and "creamy" do not mean the same thing. One is a noun, and the other is an adjective. One is a thing, and the other is an attribute.

Lots of things are creamy, but lack dairy. Try walking through the frozen food aisle in Whole Foods, and check out the selection of dairy-free ice cream. It practically overflows from the case. Food websites are loaded with recipes for dairy-free, but-yet-creamy food products, too.

11

Creamy peanut butter is . . . creamy. So is a smoothie. And coconut milk.[5] And then there's cream soda. Ever had a Twinkie? How about an Oreo? The list of creamy cream-free food items goes on and on. Try doing a search on the internet for "creamy guacamole," and see what happens.

And the word "creamy" can describe lots of things that aren't food, too. Consider, for example, hand lotion. Few people would sue a cosmetic company for selling hand cream that lacks dairy. No reasonable consumer would.

The words "caramel" and "creamy" alone are not enough for a reasonable consumer to expect more than a *de minimis* amount of milk fat ingredients. *See Sneed v. Ferrero U.S.A., Inc.*, 2023 WL 2019049, at *2–3 (N.D. Ill. 2023) ("Something more than dictionary definitions needs to be pled to show that it is plausible that a reasonable consumer would be deceived by the word 'cream.'"); *DeMaso v. Walmart, Inc.*, 2023 WL 1800208, at *4 (N.D. Ill. 2023) (concluding that the plaintiff did not plausibly allege that "consumers expect the term 'fudge' to denote that a certain product contains specific ingredients"); *Huston v. Conagra Brands, Inc.*, 2022 WL 4647251, at *5–6 (C.D. Ill. 2022) (same); *Burns v. Gen. Mills Sales, Inc.*, 2022 WL 3908783, at *4–5 (S.D. Ill. 2022) (same).

Another court in this District recently came to the same conclusion about a different brand of caramels from the same candy company (in a case brought by the same lawyer). No reasonable consumer would expect a caramel candy – even one described as "creamy" – to contain certain dairy ingredients or specific amounts of milk fat. *See Biczo v. Ferrara Candy Co.*, 2023 WL 2572384, at *2 (N.D. Ill. 2023) ("Biczo's analytical jump . . . is her own

---

[5] Lest anyone be disappointed, coconut milk doesn't actually come from cows.

12

interpretation, and she has not shown that the reasonable consumer would be misled by this labeling.").

In sum, Gardner has failed to allege that the candy's label was false, deceptive, or misleading under the ICFA or comparable laws from other states.

## II.    Remaining Claims

The Court's holding that Gardner has not sufficiently alleged that a reasonable consumer would be misled by the Nips labeling is a kill shot to the Achilles Heel of the case.  The remaining claims share the same vulnerability.

Every claim in Gardner's complaint requires proof of a deceptive act or practice[6] – the alleged misrepresentation of milk fat – so the entire complaint rises or falls with that analysis. No deception, no claims.  So, the Court dismisses the other claims, too.

The Court begins with the warranty claims.  An express warranty claim requires that a seller:  "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise."  *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020).  A breach of the implied warranty of merchantability occurs if the product is not "fit for the ordinary purposes for which such goods are used."  *See* 810 ILCS 5/2-314(2)(c).

---

[6]  *See* Cplt., at ¶ 95 (Dckt. No. 1) (alleging that the breach of warranty claims are based on "Defendant's representations . . . [that] the Product contained more than a *de minimis* amount of dairy ingredients with milk fat"); *id.* at ¶ 112 (alleging that the negligent misrepresentation claim is based on Defendant's representations about the product which "took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant"); *id.* at ¶ 115 (alleging that the common-law fraud claim is based on the fact that "Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained more than a *de minimis* amount of dairy ingredients with milk fat"); *id.* at ¶ 119 (alleging that the unjust enrichment claim is based on Defendant obtaining "benefits and monies because the Product was not as represented and expected").

Relatedly, a "consumer's ability to state a claim under the [Magnuson Moss Warranty] Act 'is dependent on the existence of an underlying viable state-law warranty claim.'" *See Lederman v. Hershey Co.*, 2022 WL 3573034, at *6 (N.D. Ill. 2022) (quoting *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. 2016)).

The Court's holding that no reasonable consumer would be misled under the ICFA applies to Gardner's warranty claims, too. *See DeMaso*, 2023 WL 1800208, at *5 (explaining that the conclusion that the product's labeling was not false, misleading, or deceptive as a matter of law was also fatal to the claims for breach of express and implied warranties); *Sneed*, 2023 WL 2019049, at *4 ("[T]he fact that she has not alleged that Ferrero U.S.A., Inc. made any kind of promise that it did not fulfill dooms her claims, whether she is claiming breach of an implied warranty as defined by state law or an express warranty as defined by [the Magnuson Moss Warranty Act]."); *Zahora v. Orgain LLC*, 2021 WL 5140504, at *5 (N.D. Ill. 2021) (collecting cases); *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *6 (N.D. Ill. 2022). And without a viable state-law claim, her claim under the Magnuson Moss Warranty Act also fails. *See Lederman*, 2022 WL 3573034, at *6.

The negligent misrepresentation claim suffers from the same problem. A negligent misrepresentation claim requires the plaintiff to plead and prove: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006). Without a false or deceptive statement, Gardner cannot satisfy prong one. *See Sneed*, 2023 WL 2019049, at *5. This claim also fails.

14

It is the same story for the common-law fraud claim. That claim requires a plaintiff to plead and prove that: (1) the defendant made a false statement of material fact, (2) the defendant knew that the statement was false, (3) the defendant intended that the statement induce the plaintiff to act, (4) the plaintiff did act in reliance on the statement, and (5) the plaintiff was damaged from her reliance on the statement. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). Again, without a false or deceptive statement, this claim can go nowhere. *See Hamidani*, 2023 WL 167513, at *3; *see also Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *2 (N.D. Ill. 2022) ("The elements of a common-law fraudulent misrepresentation claim largely overlap with a deceptive-practices claim under the ICFA, and include 'a false statement of material fact.'") (footnote omitted) (quoting *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018)).

Finally, "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *Vanzant*, 934 F.3d at 739–40 (quotation marks omitted). "Rather, it's a condition brought about by fraud or other unlawful conduct." *Id.* "Because all of Plaintiff's other claims fail, so too does her unjust enrichment claim." *Lederman*, 2022 WL 3573034, at *7; *see also Sneed*, 2023 WL 2019049, at *6; *Cerretti*, 2022 WL 1062793, at *7.

In sum, because Gardner has not sufficiently alleged that a reasonable consumer would be misled by the Nips labeling, the remaining claims must also be dismissed.

As an aside, the complaint faced a number of other daunting hurdles, too, above and beyond the failure to plead a false or misleading statement. For example, to bring an express warranty claim under Illinois law, the buyer must give pre-suit notice to the seller. *See* 810 ILCS 5/2-607(3)(a) ("Where a tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from

15

any remedy."); *see also Sneed*, 2023 WL 2019049, at *4 (dismissing a warranty claim for failure to give "pre-suit notice"). Gardner admits that the only notice she gave Ferrara was "by filing this action in March 2022." *See* Pl.'s Resp., at 8 (Dckt. No. 19). So, she has not met the pre-suit notice requirement.

Gardner's implied warranty claim faces other issues, too. Under Illinois law, an implied warranty claim "give[s] a buyer of goods a potential cause of action *only against his immediate seller*." *Sneed*, 2023 WL 2019049, at *4 (emphasis in original) (quoting *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988)). But here, Gardner did not purchase the candy from Ferrara. She purchased the candy from stores like Walmart. *See* Cplt., at ¶ 58 (Dckt. No. 1).

Gardner contends that her purchase falls under an exception to the privity requirement for manufacturers who are in a direct relationship with the seller. *See* Pl.'s Resp., at 8 (Dckt. No. 19). The Court has its doubts about whether the complaint sufficiently pleads this relationship. *See* Cplt., at ¶¶ 92–107 (Dckt. No. 1). So, even if Plaintiff could overcome the lack of a false or misleading statement, this issue continues to lurk in the background.

Finally, Gardner's negligent misrepresentation claim appears to run headlong into the economic loss doctrine. Decades ago, the Illinois Supreme Court held that plaintiffs cannot recover for a "solely economic loss" in an action for strict liability or negligence. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449–50 (Ill. 1982). Simply put, under Illinois law, "one cannot obtain purely economic damages in an action sounding in negligence or strict liability in tort." *Jett8 Airlines, PL v. Gen. Elec. Co.*, 2014 WL 5488054, at *2 (Ill. App. Ct. 2014).

Here, Gardner alleges only economic injury, which is not compensable under the economic loss doctrine. Gardner does not allege that she suffered physical injury from the candy. *See, e.g.*, Cplt., at ¶ 64 (Dckt. No. 1) ("Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it."). And it's not clear how she could. Caramel doesn't hurt anybody. *See, e.g.*, *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1164 (N.D. Ill. 2022) (dismissing a negligent misrepresentation claim based on deceptive labeling on economic loss doctrine grounds); *Sneed*, 2023 WL 2019049, at *5 (same); *Hamidani*, 2023 WL 167513, at *4 (same); *Karlinski v. Costco Wholesale Corp.*, 2022 WL 2867383, at *8 (N.D. Ill. 2022) (same).

## III.   Injunctive Relief

Finally, Ferrara argues that Gardner lacks standing to seek injunctive relief. *See* Def.'s Mtn., at 12–13 (Dckt. No. 8-1). But because the complaint has failed to state a claim, the Court does not need to address this argument. *See, e.g.*, *Sneed*, 2023 WL 2019049, at *6; *Lederman*, 2022 WL 3573034, at *7; *Karlinski*, 2022 WL 2867383, at *10. Without any viable claim for relief, "there are no claims for which [Gardner] can seek injunctive relief as a remedy." *Chiappetta*, 2022 WL 602505, at *9.

### Conclusion

For the foregoing reasons, Ferrara's motion to dismiss the complaint is granted.

Date:  March 22, 2023

Steven C. Seeger
United States District Judge

17